[Crim. No. 6129.    Second Dist., Div. One.    Dec. 16, 1958.]

THE PEOPLE, Respondent, v. JAMES REDDING HAZELIP, Appellant.

Cornell Ridley, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction and from the "sentence made and entered" for first degree robbery.

An information was filed in Los Angeles county charging the defendant with armed robbery in violation of section 211 of the Penal Code on or about June 10, 1957, in that he took $3,300 from Irene Krichbaum, and further alleging two prior convictions of the defendant, one for sale and possession of narcotics prosecuted in the federal court in New York in 1943, and that he served a term in prison therefor; and one for conspiracy to violate the narcotics law in the same court in 1947, and that he served a term in prison therefor. The defendant pleaded not guilty and denied the prior convictions, however, he subsequently admitted the two prior convictions. A jury found the defendant guilty of robbery in the first degree and also found that he was armed with two revolvers at the time of the commission of the offense. The court sentenced the defendant to the state prison and this appeal followed.

A résumé of the facts most favorable to the prosecution, and facts which the jury might well have found to be true, is as follows: On or about June 9, 1957, a man by the name of Holland asked the defendant if he, the defendant, knew of a place he and a man by the name of Teresi could rob. The defendant was formerly employed as a waiter at the Miramar Hotel in Santa Monica, and knew of the location of the auditor's office where the hotel money was kept, and the defendant suggested that the hotel be chosen. Plans for the

robbery were completed at the defendant's apartment. Pursuant to the plans, Holland and Teresi met at the defendant's apartment about 9:30 o'clock a. m. the next day, June 10, 1957. Susan Matlock and James Shannon, acquaintances of the defendant, had arrived at the defendant's apartment between 9 and 9:30 o'clock a. m., at a time when no one else was present in the apartment. The defendant returned to his apartment and shortly thereafter Holland and Teresi arrived. The defendant, Holland and Teresi went into the bathroom in the apartment and talked together. Holland, at that time, had two loaded revolvers in his possession. He gave one to Teresi and retained the other. The defendant, Holland and Teresi left the apartment about 9:30 o'clock a. m., in Holland's automobile with the defendant doing the driving. They returned to the defendant's apartment shortly thereafter and left again in about 10 or 15 minutes.

Holland's automobile was driven to the vicinity of the Miramar Hotel, and Holland and Teresi got out and went into the hotel. The defendant remained in the automobile. In about 15 minutes Holland and Teresi returned to the automobile and stated that they had been unable to locate the auditor's office. The three of them then drove to a drug store, had some refreshments, and returned to the hotel. Holland and Teresi entered the auditor's office in the hotel at about 11:45 o'clock a. m.

Teresi pointed a gun at Mrs. Krichbaum, an assistant auditor in the office, and asked where the safe was located. She opened the safe and Holland removed some money and a metal box from the safe, and at the same time Teresi took currency from the cash drawer. Whatever was stolen was taken without the permission of Mrs. Krichbaum, and she told where the money was kept only because she was frightened. Upon leaving the hotel the second time, Holland and Teresi entered the automobile of Holland, with the defendant as the driver, and they then proceeded together to the defendant's apartment.

The time lapse from their leaving the apartment the second time to their return after the robbery was about 30 to 45 minutes. Holland and Teresi entered the apartment first, followed soon after by the defendant. Susan Matlock and Shannon were still there. Holland put two guns into his pockets, and Holland and Teresi got down on the floor and emptied the money from their pockets. The defendant joined them, but did not put any money on the floor. Holland had

a metal box which contained money rolls. The money was then evenly divided between Holland and Teresi and the defendant, each getting about $900.

Holland and Teresi then left the apartment. Shannon also left and called for a taxicab. The defendant asked Susan Matlock if she cared to count his money, and she replied that she did not. Susan Matlock asked the defendant where the money came from and said that the defendant replied, "it was none of my business, and that he didn't discuss his capers with me or any other woman." Shortly thereafter a taxicab arrived and the defendant, Shannon and Susan Matlock left in it.

On June 26, 1957, at about 12:45 o'clock a. m., while Holland was driving Teresi home in the former's automobile, he and Teresi were arrested. The arresting officers searched the automobile and found two loaded revolvers, one in Holland's pocket and the other in a pocket of a jacket in the car. On July 11, 1957, while in custody, Holland made and signed a statement confessing his guilt in the robbery.

The defendant was arrested on July 10, 1957, at about .9 o'clock p. m., by an officer of the Santa Monica police department. The defendant was then released to the custody of the Los Angeles police department, at the latter's request upon another charge, on July 16, 1957. On July 19, 1957, a complaint was filed and a warrant for the defendant's arrest was issued. Pursuant to the warrant one Kocher, then an officer of the Santa Monica police department, arrested the defendant on July 19, 1957. The defendant was arraigned a few days after his arrest. Between the time of his arrest on July 10th, and his rearrest on July 19th, the defendant was questioned about the robbery between five and fifteen times. During these occasions he made no admissions concerning the robbery.

The defendant appeared to be a narcotic addict, however, he made no request for any narcotics prior to July 19, 1957. He was asked by the arresting officer how he was getting along without narcotics, and the defendant replied, " 'Oh, just fine,' " and remarked that he was able to "handle or control the situation." The defendant later admitted that he had, at the time of his arrest, concealed some narcotics in one of his body cavities and had been using such narcotics while in jail.

On July 19th, while the officers were talking with the defendant generally about narcotics, the robbery and other re-

lated matters, the defendant stated that he felt ill, and said, " 'I will tell you what you want to know if you can help me out.' " The police told the defendant, " 'we can't guarantee we can give you any narcotics, but we can call a doctor, and it is up to him.' "

A stenographer for the Santa Monica police department was called into the room to record the defendant's statement. The taking of the statement of the defendant was then interrupted by the arrival of Dr. Robert Vock at about 6 o'clock p. m. The doctor did not examine the defendant but did ask the defendant if he would " 'like a drug which will make you feel better, but which is not an opiate, which is not a narcotic?' " The defendant refused any such drug and asked the doctor to give him some morphine. The doctor left without giving the defendant anything.

Officer Kocher then told the defendant that they would attempt to obtain another doctor. Pursuant to the request of the officer for a doctor, Dr. H. W. Seiger was called by the Emergency Relief Panel of the Los Angeles County Medical Association and was asked to go to the police station, which he did. When the doctor arrived at the station the defendant's statement was in the course of being taken. The doctor testified that he asked what the defendant complained about and was told the defendant was a narcotic addict, and he further stated that as he recalled, the officer said, "in order to question him, they had to make him feel better; that he hadn't had anything for some time, and if I would give him an injection, they would appreciate it." Officer Kocher recalled that the doctor examined the defendant and said he would give him some morphine, but neither the officer nor his partner, who were both present in addition to the defendant and the doctor, told the doctor to give the defendant morphine so that they could get a statement from him. The doctor testified that in his opinion, the defendant was a narcotic addict and was at the time suffering from withdrawal pains. The defendant requested several grains of narcotics and the doctor finally gave him a half a grain of morphine sulphate, and the defendant administered this drug to himself. The doctor left about 8 o'clock p. m.

The interview with the defendant continued until after 9 o'clock p. m. The defendant was then returned to his cell, and upon his request was given a shower bath and shave, and was permitted to clean up. The two officers who had

questioned the defendant went out to eat and returned to the police station at about 11 o'clock p. m.

The statement was typed soon thereafter and the defendant was handed a copy which he read. He corrected the statement by inserting in his own handwriting the words, " 'Holland asked me if I knew a place he and Teresi could rob and I said yes,' " following the answer "yes" to the question, "On June 9th, Sunday, of this year, did you talk to anyone about a robbery?" The defendant told Officer Kocher of this omission prior to writing it in, and was told, "Well, if that is true, just write it in." No promise of reward or immunity was made to the defendant, nor was any force or violence, or threat thereof, used with respect to the defendant. The defendant signed the written statement about 11:30 o'clock p. m. He had been shown portions of statements made by Holland, Teresi and Susan Matlock.

Susan Matlock testified that after she received a subpoena relative to the trial of the defendant, she received a letter from him, and that although the original letter was lost she recalled that it contained in part a statement that the defendant "wouldn't have broken and given in to the authorities if he hadn't seen my statement. He had seen the other statement that was signed, but when he had seen mine, it broke him down because he thought I was good people, and he didn't think that I would ever sign a statement against him, and that he hoped that I could smile and feel good while I was walking around."

The defendant did not take the witness stand to say that what was in the confession was not true and correct, or otherwise. The defendant did call as a witness Holland, who, by his testimony, repudiated a former statement which he had made to the police to the effect that the defendant was implicated in the robbery, and added that he and Teresi had planned the robbery, that they had not discussed it with the defendant and that he did not know that the defendant had previously worked at the hotel.

The defendant now contends that the court erred in admitting the defendant's full and complete confession into evidence in that it was obtained in violation of the Fourteenth Amendment of the United States Constitution (due process clause), and further that it was in violation of sections 825 and 849 of the Penal Code.

Section 825 of the Penal Code provides in part, "The defendant must in all cases be taken before the magistrate with-

out unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays. . . .''

Section 849 of the Penal Code, as it read at the time of the acts in question, provided: ''When an arrest is made without a warrant by a peace officer or private person, the person arrested must, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the arrest is made, and a complaint stating the charge against the person, must be laid before such magistrate.''

■ The law in California is settled to the effect that a confession made by one in illegal detention is not, for that reason alone, made inadmissible. (*Rogers* v. *Superior Court*, 46 Cal.2d 3, 10 [291 P.2d 929]; *People* v. *Bashor*, 48 Cal.2d 763, 765 [312 P.2d 763].)

■ The burden is upon the prosecution to show that the confession offered was freely and voluntarily made, and such a showing was made in this case. ■ A delay in the arraignment is only one of the factors which may be considered by the trial court in ascertaining and determining whether the confession was freely and voluntarily made.

The rule in the federal courts is different, although the United States Supreme Court in *Gallegos* v. *Nebraska*, 342 U.S. 55, pages 63-64 [72 S.Ct. 141, 96 L.Ed. 86] said:

''. . . The rule of the McNabb case . . . is not a limitation imposed by the Due Process Clause. . . . Compliance with the McNabb rule is required in federal courts by this Court through its power of supervision over the procedure and practices of federal courts in the trial of criminal cases. That power over state criminal trials is not vested in this Court. A confession can be declared inadmissible in a state criminal trial by this Court only when the circumstances under which it is received violate those 'fundamental principles of liberty and justice' protected by the Fourteenth Amendment against infraction by any state.'' See also *Crooker* v. *California*, 356 U.S. 433 [78 S.Ct. 1287, at page 1291, 2 L.Ed.2d 1448], where the court said:

''At times petitioner appears to urge 'a rule' barring use of a voluntary confession obtained after state denial of a request to contact counsel regardless of whether any violation of a due process right to counsel occurred. That contention is simply an appeal to the supervisory power of this Court over the administration of justice in the federal courts. See *McNabb* v. *United States*, 318 U.S. 332 [63 S.Ct. 608, 87 L.Ed. 819] (1943), which, significantly enough, petitioner cites.

The short answer to such a contention here is that this conviction was had in a state, not a federal court.''

The California Supreme Court stated in *Rogers* v. *Superior Court, supra,* 46 Cal.2d 3, at page 10, that, ''A pretrial confession is admissible, so far as due process is concerned, if it is voluntarily made.'' The court also pointed out in the cited case that (p. 10):

''. . . Since the McNabb case, the state courts that have had occasion to reevaluate their test of admissibility as it applies to a confession made during illegal detention continue to treat delay in arraignment as only one of the factors to be considered in determining whether the statement was voluntarily made. Apparently none of the states following the rule excluding illegally obtained evidence have adopted the rule of the McNabb case; and we are not disposed to adopt it.'' (See also *People* v. *Bashor,* 48 Cal.2d 763, 765 [312 P.2d 255]; *People* v. *Tipton,* 48 Cal.2d 389, 393-394 [309 P.2d 813].)

The admitting of the confession under the circumstances of this case did not violate the due process clause of the Fourteenth Amendment of the United States Constitution.

The confession in the present case was, in our opinion, freely and voluntarily made, without any previous inducement or by reason of any intimidation or threat. ▮ Whether a confession is of the character as just stated is for the trial court to determine in the first instance. (*People* v. *Mehaffey,* 32 Cal. 2d 535, 548 [197 P.2d 12].) ▮ The rule which this court is to follow in reviewing the matter was well stated in *People* v. *Lapin,* 138 Cal.App.2d 251, at page 263 [291 P.2d 575], as follows:

''. . . Discretion is vested in the trial court to determine whether or not a confession is admissible and the jury under proper instructions, are the sole judges of the credibility of witnesses in regard to the matter (*People* v. *Oliveria,* 127 Cal. 376, 381 [59 P. 772]). ▮ It is not within the province of a reviewing court to say that the trial court committed error in admitting a confession of guilt unless such error appears as a matter of law from the record presented (*People* v. *Lehew,* 209 Cal. 336, 341 [287 P. 337]. . . .)''

The rule governing the sufficiency of the evidence to sustain a verdict was stated in the often quoted case of *People* v. *Newland,* 15 Cal.2d 678, 681-682 [104 P.2d 778], and there is no reason to quote the rule here. The evidence in this case is, in our opinion, overwhelming, rather than merely clearly sufficient.

■ In short, the defendant in this case was a narcotic addict; he was suffering from withdrawal pains after having consumed all of the narcotics which he had surreptitiously taken into the jail in one of his body cavities at the time of his arrest. He stated, when the officers were questioning him, ". . . I'm sick. I'm down. I will tell you what you want to know if you can help me out." The officer stated, "Well, we can't guarantee we can give you any narcotics, but we can call a doctor, and it is up to him." The defendant then started to make the statement, and completed it after receiving the requested narcotics. About two hours later, after he had cleaned up, showered and shaved, he was presented with a typewritten copy of the statement and protested that it was incorrect in one aspect. He thereupon corrected it in his own handwriting, and signed the statement as corrected. There is no evidence that he was suffering from withdrawal pains at the time of correcting and signing the written statement; on the contrary it was indicated that he was in full possession of his faculties at such times. He later indicated that he never would have confessed but for the statement which was made by Susan Matlock, and which was shown to him during the course of the investigation.

The case of *Mallory* v. *United States*, 354 U.S. 449 [77 S.Ct. 1356, 1 L.Ed.2d 1479], cited by the defendant did not involve the question of due process, but rather involved the interpretation and application of the federal rules of criminal procedure. None of the other cases cited by the defendant are, in our opinion in point.

■ There is no appeal from a sentence. (*People* v. *Gallardo*, 41 Cal.2d 57, 60 [257 P.2d 29].)

The judgment of conviction is affirmed. The purported appeal from the sentence is dismissed.

White, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 7, 1959.