[Crim. No. 6930.   Second Dist., Div. Three.   Apr. 20, 1960.]

THE PEOPLE, Respondent, v. LLOYD ALLEN RANSOME et al., Defendants; ALBERT MASON DEAN, Appellant.

Virgil V. Becker, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

FORD, J.—This is an appeal by Albert Mason Dean from a judgment of conviction of the crime of grand theft (Pen. Code, § 487, subd. 1) and from an order denying his motion for a new trial. The allegation in the information with respect to a prior conviction of the appellant of the crime of robbery, for which he served a term of imprisonment in the state prison, was found to be true. His codefendant, Lloyd Allen Ransome, was acquitted of the charge of grand theft.

Three issues are raised by the appellant. He contends that he was subjected to an unlawful arrest. He further asserts that there was an illegal search and seizure of property at his place of residence and that, therefore, his objection to the introduction of evidence which was obtained as a result thereof should have been sustained. Finally, he questions the sufficiency of the evidence to sustain the conviction.

The appellant duly waived a trial by jury. Pursuant to stipulation, the case was submitted to the trial court upon the evidence set forth in the transcript of the preliminary hearing and on certain other testimony offered on behalf of the appellant at the trial. The evidence pertinent to the issues raised will be summarized.

The automobile of Kevan Del-Grande was parked near his residence in Los Angeles at about 8:30 p. m. on March 14, 1959. In the automobile were two photocopy machines and some boxes of paper. The next morning the articles were missing.

The appellant and Ransome were arrested on March 17, 1959, at about 9:50 p. m. in an industrial section of Los Angeles. At that time, the arresting officers had no knowledge of the theft of the photocopy machines. The officers, who were in an "undercover" car, first saw appellant and Ransome earlier in the evening. About 10 minutes later they again saw the automobile being driven by the appellant. He was driving slowly "and appeared to be looking in doorways and business fronts." Later, the officers saw that the lights of the automobile were out and Dean and Ransome were pushing the vehicle to the curb. It was thereafter determined that the battery had failed. There had been a number of recent burglaries of business establishments in the vicinity. The two men were arrested without a warrant and booked on "suspicion of burglary."

Sergeant King, one of the investigating officers, had a conversation with the appellant on March 18. He asked Dean as to property taken to his house on the preceding day and of what the property consisted which Ransome had helped

him take upstairs. Dean stated that it consisted of tools which were taken there to be given to his brother. When the officer asked the appellant if he would like to go over there with the police and point out the tools, the appellant stated that he did not care to speak any further on the subject.

Thereafter, before he learned of the theft of the photocopy machines, Sergeant King went to the appellant's place of residence in Los Angeles. It was a small apartment on the third floor of an "old-style house." The officer had no search warrant and had not asked the appellant for permission to search the premises. The person who answered the door identified herself as Dean's sister-in-law. She stated that the appellant and his wife lived with her. Sergeant King identified himself and Officer Shelley and told her that he had come for the property that was brought there the evening before by Dean and Ransome. He informed her and the appellant's wife that the appellant was under arrest and in custody. The sister-in-law said, "Come in. It's right where they left it." The officers entered the room and she indicated a closet adjacent to the sitting room. In the closet were two photocopy machines, one being covered with a brown tarpaulin and the other with a gray blanket. Six bundles of paper were also found.

On March 23, Sergeant King again talked to the appellant in the county jail. The appellant said that Ransome had just carried the paper and that he, Dean, had carried up the two machines. The officer asked him if he cared to tell him about the machines. The appellant said that he did not and that it could all be explained later.

The evidence thus far summarized is found in the transcript of the preliminary hearing and, except for proof of the prior conviction alleged, constituted the case in chief against the appellant. The court denied his motion to strike the testimony theretofore given which motion was made "on the grounds that the arrest was without probable cause, and was in itself illegal."

The first witness called on behalf of the appellant was his sister-in-law, Verna Dean. The witness and the appellant and his wife were living in the same place, having rented it together. About March 18, some police officers, King and Shelley, came to the residence. They only came on one occasion. When Officer King went upstairs and she introduced him to appellant's wife, King stated that the appellant had been arrested. The appellant's wife was disabled and was in

bed. The witness further testified: "Well, Helen asked him did they have her husband in jail, and they said yes, and then they said yes, it was a robbery charge, or something like that, and they asked us if he had brought anything there, and we told him yes, and Helen and I told him it was in the closet there. And they said yes, they had Mr. Dean, and they had talked to him, and he had said it was there, too." In response to a question as to whether the officers said anything about having the appellant's permission to go into the premises and remove anything, she stated, "I don't know if anyone said anything about permission. After we told them it was in the closet, they said that they had talked to Mr. Dean, and he had said it was there." She was then asked whether she let the officer into her premises. She answered, "Well, they are detectives, and we see no reason why we couldn't, I mean. You just naturally let a policeman in."

The appellant testified in his own behalf. When Officers King and Shelley said that they were going over to his house, he said nothing and did not give them permission to do so.

The motion of the appellant to suppress the evidence of the articles seized at his place of residence, made at this point in the trial, was denied.

The appellant later resumed the witness stand. He testified that on the evening of March 15, 1959, Herschel Foyt, who was a partner in a body and fender shop, told him that he had obtained possession of the photocopy machines as security for a body and fender and paint job he had done but that the man who had left the machines had not returned to pay for the work. The appellant then continued: "He just said that he had left them there, and that he was going to sell them to realize his money back off of the job, and he told me, he said, 'We decided to come over and see you, because you are a printer. You would probably know where we could sell them.' He said, 'I've got a hundred and ninety dollars invested.' And my brother Earl had loaned me fifty dollars previously and he said I could help pay off the fifty dollars I owed him." The machines were transferred from Foyt's automobile to the back end of appellant's automobile. In response to a question as to whether he was told, "We've got a deal for you, but you might want it all," the appellant answered, "I believe Earl made that statement in regards to money that he owed me. He made the statement because he knew that he owed me fifty dollars, and he would have to pay the fifty dollars." Foyt told the appellant that he would do body work on the appellant's automobile for the appellant's help

in the sale of the machines. In addition, if the appellant helped Foyt in sanding and masking the car, Foyt would paint it for him. On March 17, Ransome offered to help him carry articles from the automobile to appellant's apartment. The articles in question were taken upstairs into the apartment. Some tools belonging to the appellant's brother were carried upstairs by Ransome by mistake and they were returned to the automobile. The appellant denied that he had stolen the machines and the paper from an automobile. When the officers discovered the articles at his place of residence, they came back and talked to him in jail but he did not tell them anything. He did not tell them where he obtained them "[b]ecause I didn't know exactly what was the matter, and I wanted the advice of some attorney before I said anything." He told them,"I want to talk to my attorney before I say anything." He covered the machines "because they were glass and we didn't want them to get broken." The appellant testified that he had had his sister-in-law attempt to contact Foyt and she had been unable to do so.

Although the matter of the arrest will be discussed at a later point herein, we turn first to the contention that the evidence obtained as a result of the search of appellant's place of residence was not admissible. ▮▮▮ Such search was clearly not incidental to the arrest. (*People* v. *Gorg,* 45 Cal.2d 776, 781 [291 P.2d 469]; *Hernandez* v. *Superior Court,* 143 Cal. App.2d 20 [299 P.2d 678].) The propriety of such search must, therefore, rest upon the determination of whether the trial court was warranted in reaching the conclusion that the appellant's sister-in-law could and did consent thereto. (*People* v. *Burke,* 47 Cal.2d 45, 49 [301 P.2d 241].)

It was clear from the evidence that the appellant's sister-in-law was one of the tenants of the apartment, having rented it together with appellant and his wife. ▮▮▮ The applicable law was stated by Mr. Justice Peters in *People* v. *Howard,* 166 Cal.App.2d 638, at page 651 [334 P.2d 105] : "It is, of course, the law that evidence secured in an illegal search is not admissible. (*People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].) ▮▮▮ However, it is also the law that if the defendant or someone with apparent authority, consents to the entry, and the entry is made in good faith, it is not unlawful. Thus, defendant's mother can give consent to the entry (*People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852]) ; as can the owner of a house in which defendant rents a room (*People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469] ; *People* v.

*Caritativo,* 46 Cal.2d 68 [292 P.2d. 513]) ; or the wife of defendant (*People* v. *Dominquez,* 144 Cal.App.2d 63 [300 P.2d 194]). In *People* v. *Silva,* 140 Cal.App.2d 791 [295 P.2d 942], it was held that the brother of defendant's mistress, who lived at the house, could grant consent to an entry. Under these cases, anyone in joint occupancy of the house has authority to permit an entry without a warrant." (See also *People* v. *Gorg, supra,* 45 Cal.2d 776, 783 [291 P.2d 469] ; *People* v. *Caritativo,* 46 Cal.2d 68, 73 [292 P.2d 513] ; *People* v. *Silva,* 140 Cal.App.2d 791, 794-795 [295 P.2d 942].)

■ The fact that a police officer is the person seeking to search the premises does not, in and of itself, render consent to the entry and search involuntary. As stated in *People* v. *Galle,* 153 Cal.App.2d 88, at page 90 [314 P.2d 58] : "While there is reason for the view that a request or a demand by an officer for permission to search premises is to some extent coercive, considered alone, it does not render the consent involuntary as having been obtained by coercion."

■ In the present case, the trial court was warranted in reaching the conclusion that the requisite consent had been given to the entry of the premises and the closet in which the stolen property was found. (See *People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852].) ■ The seizure of the photocopy machines and the paper was justified because the nature of the articles and the circumstances under which they were found were amply sufficient to suggest to a reasonable mind that the goods were stolen. (*People* v. *Wright,* 153 Cal.App.2d 35, 39-40 [313 P.2d 868] ; see *People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721].)

We turn now to the matter of the arrest. Since, as we have just determined, the appellant cannot complain of the manner in which the officers obtained possession of the stolen property, it is not necessary to determine whether the arrest on March 17, 1959, was lawful. ■ As stated in *People* v. *Ball,* 162 Cal.App.2d 465, at page 467 [328 P.2d 276] : "We know of no rule by which a valid search, justifiable without reference to an arrest, is voided by the unlawfulness of an arrest upon which the search does not depend."

The final contention of the appellant relates to the matter of the sufficiency of the evidence to sustain the conviction. His argument is that nothing was shown but mere possession of property recently stolen. ■ But, as stated in *People* v. *Russell,* 120 Cal.App. 622, at page 625 [8 P.2d 209] : ". . . when property is found in the possession of a defendant

shortly after it has been stolen the corroborating evidence required to sustain a conviction need be but slight, and . . . the rule is not only applicable to cases where the charge is larceny, but to all cases where the commission of the crime charged included the stealing of property.'' The governing principle was stated by Mr. Justice Traynor in *People* v. *Citrino,* 46 Cal.2d 284, at pages 288-289 [294 P.2d 32] : ''Possession alone of property stolen in a burglary is not of itself sufficient to sustain the possessor's conviction of that burglary. There must be corroborating evidence of acts, conduct, or declarations of the accused tending to show his guilt. (*People* v. *Boxer,* 137 Cal. 562, 563-564 [70 P. 671] ; *People* v. *Carroll,* 79 Cal.App.2d 146, 148 [179 P.2d 75].) When possession is shown, however, the corroborating evidence may be slight (*People* v. *Morris,* 124 Cal.App. 402, 404 [12 P.2d 679] ; *People* v. *Taylor,* 4 Cal.App.2d 214, 217 [40 P.2d 870] ; *People* v. *Russell,* 34 Cal.App.2d 665, 669 [94 P.2d 400] ; *People* v. *Thompson,* 120 Cal.App.2d 359, 363 [260 P.2d 1019]), and the failure to show that possession was honestly obtained is itself a strong circumstance tending to show the possessor's guilt of the burglary. (*People* v. *Lang,* 142 Cal. 482, 484-485 [76 P. 232] ; *People* v. *Taylor, supra,* 4 Cal.App.2d 214, 217.) Defendant's explanation that Cotelli gave him the property was not contradicted by any witness, but in view of defendant's own use of that name and the fact that he did not know where Cotelli was at the time of the trial, the jury could reasonably conclude that Cotelli and his gift were both fictitious.''

In the present case, the appellant told Sergeant King that the property which Ransome had helped him carry upstairs to his apartment consisted of tools which were taken there to be given to his brother. That statement may have been true, as far as it went, in that Ransome may have taken some tools into the apartment, but the trial court was warranted in finding that it was otherwise false in that there was omitted therefrom any reference to the fact that the photocopy machines and the paper had been taken into the appellant's place of residence. On March 23, when Sergeant King asked the appellant if he cared to tell him about the machines, Dean said that he did not and that it all could be explained later. Furthermore, the appellant's testimony relating to the circumstances under which he had obtained the articles contained an inconsistency as to whether he owed his brother money or whether the brother owed money to him.

Such false, evasive and inconsistent statements constituted corroborating evidence. (*People* v. *Renteria,* 162 Cal.App.2d 590, 593 [328 P.2d 266].) Moreover, with respect to the explanation of the appellant as to the manner in which he came into possession of the stolen property, the question of whether he was telling the truth in that regard rested solely with the trial judge as the trier of fact. (*People* v. *Kefry,* 166 Cal.App.2d 179, 189 [332 P.2d 848].) ▮▮ As stated in the Kefry case, at page 189: "And a defendant who was in possession of stolen property has a duty to explain his possession in order to remove the effect of possession as a circumstance, taken with other suspicious facts, of guilt."

▮▮ Since the function of an appellate court begins and ends with a determination of whether the record on appeal contains evidence, contradicted or uncontradicted, which supports directly, or upon reasonable inferences drawn therefrom, the conclusion of the trier of fact, the attack of the appellant in this case upon the sufficiency of the evidence must fail. (*People* v. *Lyles,* 156 Cal.App.2d 482, 487 [319 P.2d 745].)

The judgment is affirmed; the order denying the motion for a new trial is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 14, 1960. Peters, J., and Dooling, J., were of the opinion that the petition should be granted.