[Crim. No. 8016.   Second Dist., Div. Three.   Jan. 30, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD L. RODRIQUEZ, JR., Defendant and Appellant.

Bradford A. Arthur for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Edward Rodriquez appeals from a conviction, in a nonjury trial, of two counts of violating the Health and Safety Code, section 11500, possession of narcotics.

Certain evidence, including two capsules of heroin and a

hypodermic needle in a matchcover, was introduced over objection. The evidence was obtained as a result of two separate searches and seizures, about three weeks apart, at the home of the defendant's estranged wife. The defendant was not living there at the times of the searches and seizures although he occasionally visited there.

During both searches the officers had no warrant in their possession, nor was there any outstanding against the defendant. On October 23, 1960, at about 6 p.m. according to the testimony of Officer John L. White, three police officers including himself went to the address to locate Gerald Strong. They had received information that he was living there, that he and defendant were using narcotics there, and that a felony warrant charging Strong with hit and run was outstanding. ▮▮▮ One of the officers asked if they could come into the house and Mrs. Rodriquez answered ''Yes.'' After entering, Deputy White asked her if Gerald Strong and defendant lived there; ''She stated that Eddie and Jerry did not live there; that they dropped by occasionally. I asked her if Eddie maintained his clothing and shaving gear, et cetera, at the house. She stated that he had a few things there. I asked her if she used narcotics and she became angry, stating, no, she did not use narcotics. I asked her if I might look at her arms. She extended her arms and said, 'Go ahead and look, you will find nothing.' I asked her if there were any narcotics in the house. She stated there was not; that she was violently opposed to narcotics in any form and would not tolerate them in the house and if she ever found any, she would put them in the toilet and flush them. . . . I then asked her if I might look around. . . . She stated that, I believe her words were, 'Go ahead. There is nothing here. There are no narcotics here.' . . . The first thing I did, I believe was peer in the closet, the door being open, and noted several articles of clothing, male clothing hanging on hangers with price tags and manufacturers' tags dangling from the clothing. I went through the clothing in the closet, removing all of the new articles, placing them on a bed. I searched through the pockets of various articles of clothing. In the pocket of a tan sport jacket, I found a small, clear No. 5 gelatin capsule containing approximately, I would say it was approximately a quarter full of a tan powder.'' The capsule was subsequently found to contain heroin.

On November 14, 1960, at about 10 p.m. Deputy White, accompanied by three other officers went to the same address. Deputy White testified: "I went to the front door with Deputy Love. I instructed Deputy Berman to go to the rear and Deputy Markman to go to the bathroom window." A voice from inside, identified as that of Rodriquez, asked, " 'Who is it?' ". . . "I said, 'It is White.' The voice replied, 'Just a minute, White. I have got to find the key.' Some reference was made to a key. A few seconds later the voice said, 'White, will you go to the rear door? I can't find the key.' I said, 'All right.' I then stepped back. I heard activity inside the house such as heavy footsteps. I then heard the sound of breaking glass and I heard a voice I recognized as Deputy Markman shouting that he was flushing and, 'Stop or I'll shoot.' On hearing this, I forced entry through the front door by kicking the door panel out, observing Gerald Strong seated in a chair with his hands over his head and the defendant, Rodriquez standing in the bathroom leaning over the bathtub where the water was running and an arm holding a revolver sticking in the bathroom window." Officer Markman was holding the revolver. Deputy White looked in the bathtub and observed broken glass and running water. He also noticed a gelatin capsule adhering to the side of the bathtub, another capsule on the floor, and a spoon containing a white substance. Both capsules and also the residue on the spoon contained heroin. Deputy White also testified that on the following day, November 15, 1960, defendant admitted to police officers that he had "fixed" just previous to the officer's entry and that he remembered putting the capsule, discovered during the October 23rd search, in the tan sport jacket, but that he had forgotten about it and had left it there.

Defendant Rodriquez testified in his own behalf with general denials. He contends that the introduction of the evidence produced as a result of the two searches was error and deprived him of due process of law. He argues there was not a valid consent for the first search, on October 23, 1960, in that there was present only a submission to authority. We find no merit in this contention.

Consent to a search of the premises, in a private home, may be given by the occupying owner thereof. (See 44 Cal.Jur.2d, Searches and Seizures, § 41; *People* v. *Ransome,* 180 Cal.App.2d 140 [4 Cal.Rptr. 347].) In this case there was no showing that Mrs. Rodriquez did not have suffi-

cient authority to consent to the search. The evidence was to the contrary. Defendant did not live at the home at the time. ▋ Furthermore, the fact that a police officer is the person seeking to search the premises does not in and of itself render consent to the entry and search involuntary. While his request or demand for permission to search premises is to some extent coercive, considered alone, it does not render the consent involuntary as having been obtained by coercion. (See *People* v. *Ransome, supra.*) ▋ There was no evidence that Mrs. Rodriquez's consent was other than free and voluntary. On the stand she admitted having given permission to the officers to look for Strong on the back porch. There was no indication of coercion, there was only a denial, by Mrs. Rodriquez, that there was a request by the officers to search the premises or that she gave consent thereto. This merely created a conflict in the evidence, which is not subject to review. ▋ It is not unreasonable for officers, without any show of force or coercion to seek interviews with suspects, and for that purpose to call on them in their homes. (44 Cal. Jur.2d, Searches and Seizures, § 40.)

▋ Defendant next contends that the second search and seizure, on November 14th, was lacking in probable cause. Again, we cannot agree with defendant's contention. The first search revealed that narcotics were present at the home. The officers had information that Strong and defendant were using narcotics there, but they did not act upon mere information as a basis for the searches. (See 44 Cal.Jur.2d, Searches and Seizures, § 47, and the cases cited thereunder.)

The circumstances surrounding the actual entry on the second occasion as testified to by Deputy White, were sufficient to warrant forcible entry. (See *People* v. *Williams,* 175 Cal. App.2d 774 [1 Cal.Rptr. 44].)

The judgment is affirmed.

Ford, J., and Files, J., concurred.