[Crim. No. 9037.    In Bank.    Nov. 15, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. RAE JONI
FARIS, Defendant and Appellant.

Elinor Chandler Duncan for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Edward M. Belasco, Deputy Attorney General, for Plaintiff and Respondent.

TRAYNOR, C. J.—Defendant Rae Joni Faris appeals from a judgment of conviction entered on a jury verdict finding her guilty of burglary in the second degree. The trial court denied a motion for a new trial, refused probation and sentenced defendant to the state prison.

In the afternoon of July 11, 1963, police officers arrested James Yokum when he was caught burglarizing an apartment in Los Angeles. Yokum told the officers that he lived in an apartment at 2112 Halldale Street and that they could search it. When the officers arrived at that address, however, they learned that Yokum had moved away two or three months before. At approximately 10 p.m. that evening the officers received information that led them to an apartment at 2816 South Ellendale Street. The apartment house manager told them that Yokum lived there and gave them a key to

Yokum's apartment and permission to search it. The officers, without a warrant, entered Yokum's apartment and found numerous clocks, irons, cameras, wallets, and shavers, which were later determined to be stolen property.

Defendant entered while the search was in progress. She told the officers that she shared the apartment with Yokum. She also admitted that much of the property found in the apartment was not hers or Yokum's. When asked if the items had been stolen, she replied, ''Well, I am not sure how he got them, I know he has been doing some type jobs, he usually leaves during the daytime and gets back around 2 p.m. with the loot, and then pawns it and usually tears up the pawn tickets.'' The officers arrested defendant and seized the property as evidence.

The police interviewed defendant on July 12, the morning after her arrest. She denied participating in the burglaries. During an interrogation on July 13, the police told defendant that Yokum had implicated her in the burglaries. Defendant at first denied any such complicity but ultimately confessed that she had accompanied Yokum on about ''ten jobs.'' The interrogating officer summarized the substance of the conversation in a handwritten memorandum that defendant signed.[1]

Over objection the memorandum was admitted into evi-

---

[1]Defendant's statement, as written by the interrogating officer is as follows:

''J.F.

''July 13, 1963

''I got here from Chicago on the 11th of June. We moved the following Sunday over on Ellendale, apartment 1, 2816 Ellendale. From then on, I went with James (Yokum) on the burglaries, I didn't go with him every day. He, at times, would go with other fellows, I didn't know any of them. We would only hit one or sometimes two apartments. We hit apartments and always through the doors. I never picked up any of the stuff or done any searching. I would just watch out the window to see if anyone was coming. I remember that apartment on Adams where he got that record player and he did get a rifle there, also the apartment on 3814 West Adams. We only worked through the week, never on a weekend. I was with him on about ten jobs. I never went with Bob (Perry) and him, after he teamed up with Bob about a week ago, I haven't went on any jobs. Bob and James would go out on the jobs then bring the stuff or loot back to our place if they hadn't already pawned it, they then would divide it up. I tried to talk James into quitting, I told him I wouldn't go with him any more, I told him if he kept it up he would get his head blown off. He didn't know who might be in the apartments, just because no one answered the door, it doesn't mean there isn't someone home.

/s/ Joni Faris
July 13, 1963''

dence, and the interrogating officer testified to the contents of the defendant's statement.

After the prosecution rested, defense counsel called Yokum to the stand. After exonerating defendant of any participation in the burglaries he requested a recess to confer with his attorney. He thereafter returned to the stand and, to the surprise of the defense, recanted his prior testimony and implicated defendant as his accomplice in the burglaries. Defendant stated that she now wished to testify in her own defense. She took the stand and denied that part of her statement in which she admitted accompanying Yokum during the burglaries.

Defendant contends that her statement was obtained in violation of her rights to counsel and to remain silent and was therefore inadmissible. (*Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].) ■ Once the accusatory stage is reached, a suspect is entitled to counsel, and any statements elicited in the absence of counsel must be excluded unless the accused has been informed of his rights to counsel and to remain silent or has otherwise waived those rights. (*People* v. *Dorado, supra,* pp. 353-354.)

■ The accusatory stage occurs "when the officers have arrested the suspect and . . . have undertaken a process of interrogations that lends itself to eliciting incriminating statements. . . ." (*People* v. *Stewart,* 62 Cal.2d 571, 577 [43 Cal.Rptr. 201, 400 P.2d 97].) ■ The police arrested defendant and took her into custody on July 11, 1963. Thereafter, they interrogated her on July 12 and again on July 13. During the latter interview, an officer informed defendant that Yokum had implicated her in the burglaries. At this time the investigation clearly had focused on defendant and the police were under a duty to advise her of her constitutional rights before attempting to elicit a confession. There is no evidence that they did so, and defendant testified that they did not.[2] The fact that a trusty or officer of the jail

---

[2]This testimony was offered to prove that defendant's statement was involuntary. Defense counsel objected to the admission of the statement into evidence on the grounds that it was involuntary and that it was a fruit of her illegal arrest. (See *Wong Sun* v. *United States,* 371 U.S. 471, 485 [84 S.Ct. 407, 9 L.Ed.2d 441].) Defendant is not now barred, however, from urging its inadmissibility under the then unannounced principle of the *Escobedo* case. (*People* v. *Hillery,* 62 Cal.2d 692, 712 [44 Cal.Rptr. 30, 401 P.2d 382].)

informed defendant that she could apply for counsel under the referral system does not establish that she was aware of her rights to counsel and to remain silent during interrogation. Since it does not appear that defendant knowingly waived these rights, the statement should have been excluded. (*Escobedo* v. *Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; *People* v. *Stewart*, 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97].)

The trial court also erred in admitting the evidence obtained during the search of the apartment on South Ellendale. Once a defendant establishes that a search was conducted without a warrant, the burden shifts to the prosecution to show proper justification. (*People* v. *Reeves*, 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393]; *People* v. *Shelton*, 60 Cal.2d 740, 744 [36 Cal.Rptr. 433, 388 P.2d 665]; *People* v. *Haven*, 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927]; *People* v. *Privett*, 55 Cal.2d 698, 700 [12 Cal. Rptr. 874, 361 P.2d 602]; *Badillo* v. *Superior Court*, 46 Cal. 2d 269, 272 [294 P.2d 23].)

The search in this case cannot be justified as incident to Yokum's arrest since he was arrested some six hours earlier while burglarizing an apartment in another section of the city. (*People* v. *Cruz*, 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889]; *People* v. *King*, 60 Cal.2d 308, 311 [22 Cal.Rptr. 825, 384 P.2d 153].)

The search cannot be justified on the ground that the manager of the apartment house consented to it. (*Stoner* v. *California*, 376 U.S. 483 [84 S.Ct. 889, 11 L.Ed.2d 856].) Nor can it be justified on the ground that Yokum consented to it. He was aware that a search of the South Ellendale Street apartment would lead to the discovery of a large quantity of stolen merchandise, and he tried to protect himself by giving the officers the address of, and permission to search, the Halldale Street apartment. His attempt to mislead the officers with a false address clearly demonstrates that he did not consent to a search of the South Ellendale Street apartment. (*Castaneda* v. *Superior Court*, 59 Cal.2d 439, 443-444 [30 Cal.Rptr. 1, 380 P.2d 641]; *People* v. *Haven*, 59 Cal.2d 713, 720 [31 Cal.Rptr. 47, 381 P.2d 927].)

Whether or not defendant's statement was sufficiently explicit to constitute a confession, the errors in admitting the statement and the physical evidence seized at the apart-

ment were obviously prejudicial. (Cal. Const., art. VI, § 4½.)

For purposes of retrial we note also that defendant's statements made to the officers while they were conducting the illegal search are also inadmissible as a product of that search. Defendant returned to the apartment and found three officers conducting a search. They confronted her with the stolen property and secured damaging admissions. Under these circumstances the connection between defendant's responses and the illegal search was not " ' . . . so attenuated as to dissipate the taint' " of illegality. (*Wong Sun* v. *United States*, 371 U.S. 471, 487 [83 S.Ct. 407, 9 L.Ed.2d 441]; *People* v. *Bilderbach*, 62 Cal.2d 757, 763-768 [44 Cal.Rptr. 313, 401 P.2d 921].)

The judgment is reversed.

Peters, J., Tobriner, J., Peek, J., Burke, J., and White, J.,* concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Fourt in the opinion prepared by him for the District Court of Appeal, Second Appellate District, Division One, and concurred in by Mr. Presiding Justice Wood and Justice Lillie, which is quoted in full below:

This is an appeal from the "judgment and sentence and denial of motion for new trial" made following a conviction of second degree burglary (Pen. Code, § 459).

In an information filed in Los Angeles County on August 5, 1963, defendant was charged in Count I with burglarizing the apartment of Oscar Kelsey at 4226 West Adams Street on June 18, 1963, she was charged in Count II with burglarizing the apartment of Andrew La Berth Jr. between June 18 and June 19 of 1963. Counsel other than the public defender was appointed to represent the defendant, she pleaded not guilty and a jury trial was had. She was convicted of the charge set forth in Count I and acquitted of the Count II charge. She previously was convicted of and served a term in a state prison on a narcotics offense, although such prior charge was not alleged in the information. Probation was denied and she was sentenced to the state prison. This appeal followed.

The "sentence" and the "order denying the motion for

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

the new trial'' are not appealable under the circumstances of this case and will be dismissed accordingly.

A résumé of some of the facts is as follows: On June 18, 1963, Kelsey left his apartment numbered 203, 4226 West Adams Street, Los Angeles, in good order and condition when he went to work at about 6:50 a.m. When he returned in the evening he found that the apartment had been ransacked and a number of his belongings were missing, including among other things a phonograph record player and radio, a deer rifle and various articles of clothing. No permission had been given to anyone to enter or take the things mentioned or otherwise. An occupant of the apartment house saw a man leave the building about 2 p.m. on June 18 carrying a record player toward a taxicab which was parked in the street. A woman with black hair was seated in the taxicab at the time.

James Yokum, an ex-convict and a codefendant, previous to the trial of defendant Faris, pleaded guilty to burglary of the apartment of Kelsey. He testified in the trial of defendant in effect that he entered the apartment with defendant who helped him remove the stolen items to the taxicab which was used in this particular burglary.

The defendant testified in her own behalf to the effect that she had gone with Yokum on one occasion when he had used a taxicab in a burglary, that she had entered the building on that occasion and that she was in the hallway and saw Yokum enter the apartment, that Yokum had told her on the way to a pawnshop in the taxicab that he had burglarized the apartment from which the record player and rifle were stolen.

An officer testified that he had talked with the defendant after she was arrested and that he had written the substance of a part of her statements made to him.[1]

---

[1] "J.F.

"July 13, 1963

"I got here from Chicago on the 11th of June. We moved the following Sunday over on Ellendale (2816 Apt. 1). From then on I went with James (Yokum) on the burglaries. I didn't go with him every day. He some times would go with other fellows, I didn't know any of them. We would only hit 1 or sometimes 2 apts. We only hit apt's [sic]—& always through the doors. I never picked up any of the stuff or done any searching—I would just watch out the window to see if any one was coming.

"I remember that apt on Adams (4426 W. Adams #203) where he

Defendant readily admitted that she had served three years in prison in Connecticut on a conviction involving narcotics, that she came to Los Angeles from Chicago on June 11, 1963, and first moved into an apartment on Halldale Street and a week later moved into Apartment 1, 2816 South Ellendale, Los Angeles, with Yokum.

The officer read aloud that statement which he had written while talking to her (fn. 1) and she initialed and dated each page of the statement and stated that what was set forth therein was correct and signed her name to the second page thereof. With reference to her statement to the effect that she had been on ten jobs with Yokum, she and the officer talked the matter over and she indicated that perhaps she was with him on not more than six or seven jobs. The officer asked her if she wanted to change the wording in the document which he had written and she answered, ''No, it could have been, it doesn't matter.'' The James referred to in the document was James Yokum.

Yokum was taken into custody upon being caught in the act of burglarizing an establishment on July 11, 1963. The officers talked with him about other crimes which he might have committed and he was asked where he lived and whether he had any stolen property. Yokum related that there possibly could be some items of stolen property in his apartment. He was asked for permission to enter his apartment and Yokum replied: ''You can look around my apartment if you wish.'' The address which Yokum gave the officer at that time was 2112 Halldale. That address was checked by the police and it was determined that Yokum had not lived there for two or three months. At approximately 4 p.m. of the date of his arrest, Yokum complained of a foot ailment and was taken to the hospital. During the period of his transfer

---

got the record player and he did get a rifle there. Also the apt 3814 W. Adams #4 (money).

''We only worked thru the week never on a weekend. I was with him on about 10 jobs—

''I never went with Bob (Perry) and him. After he teamed up with Bob about a week ago I haven't went on any jobs. Bob & James would go out on the jobs then bring the stuff (loot) back to our place if they hadn't already pawned it, then they would divide up—

''I tried to talk James into quitting. I told him I wouldn't go with him any more. I told him if he kept it up he would get his head blown off—he didn't know who might be in the apts. just because no one answers the door it doesn't mean there isn't some one home—

/s/ Joni Faris
July 13, 1963''

from the jail to the receiving hospital and thereafter to the general hospital, an officer learned from Yokum of the 2816 South Ellendale apartment. An officer then gave such information to Sergeant Vernon shortly before 10 p.m. Vernon and two other officers went to the apartment on South Ellendale, awakened the manager and had him open the Yokum apartment and made their entrance. The officers had been there about 15 minutes when defendant walked in from the street and admitted that she lived there with Yokum. In the apartment were found, among other things, 167 items which defendant admitted did not belong to her or to Yokum, including among others, six cameras, nine wallets, five clocks, two men's electric shavers, over 30 items of jewelry and 35 identification cards of various persons. Defendant said in answer to a question as to whether the items were stolen, "Well, I am not sure how he got them. I know he has been doing some type jobs, he usually leaves during the daytime and gets back around 2 p.m. with the loot, and then pawns it and usually tears up the pawn tickets."

Appellant now asserts that she was illegally confined as the result of an illegal arrest, that it was error to admit the confession into evidence and particularly to permit that part of it which referred to ten different burglary jobs when only two counts were charged against appellant and that the prosecutor and judge were guilty of misconduct in their cross-examination of appellant.

The arrest and the search and seizure was legal under the circumstances. The officers had the permission of Yokum to enter and search his apartment, they found what appeared to be the loot from many thefts or burglaries. The appellant lived in the apartment with Yokum and she knew a considerable amount concerning which articles were stolen. Yokum had been caught that afternoon in the course of a burglary and she made damaging admissions with reference to the loot in the apartment. There can be no doubt that there was probable cause for the officers to believe that appellant was a participant or an aider and abettor in the various thefts or burglaries of Yokum. See *White* v. *Martin,* 215 Cal.App.2d 641, 650 [30 Cal.Rptr. 367] ; *People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577] ; *Bompensiero* v. *Superior Court,* 44 Cal.2d 178 [281 P.2d 250] ; *People* v. *Brite,* 9 Cal.2d 666 [72 P.2d 122].

There was no evidence that Yokum was under any pressure

or under restraint when he gave his permission to the officers to make a search of the apartment. *People* v. *Burke,* 47 Cal. 2d 45, 49 [301 P.2d 241] ; *Castaneda* v. *Superior Court,* 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641] ; *People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852].

It was Yokum who gave the consent to enter and search the apartment, not the manager of the apartment house who merely opened the door apparently with a pass key. In other words, it was a joint occupant of the apartment who granted permission to the police to enter and search and the search was made in good faith, based upon such consent. *People* v. *Ransome,* 180 Cal.App.2d 140 [4 Cal.Rptr. 347] ; *People* v. *Hughes,* 183 Cal.App.2d 107 [6 Cal.Rptr. 643] ; *People* v. *Howard,* 166 Cal.App.2d 638 [334 P.2d 105]. See also *People* v. *Amado,* 208 Cal.App.2d 780 [25 Cal.Rptr. 539] ; *People* v. *Kinard,* 210 Cal.App.2d 85, [26 Cal.Rptr. 377].

The confession of appellant was freely and voluntarily made and was admissible in evidence. *People* v. *Schindler,* 179 Cal.App.2d 584 [3 Cal.Rptr. 865] ; *People* v. *Hazelip,* 166 Cal.App.2d 240 [333 P.2d 237].

There was no misbehavior upon the part of the officer who took the confession from the appellant. *People* v. *Lopez,* 60 Cal.2d 223, 248 [32 Cal.Rptr. 424, 384 P.2d 16].

The guilt of appellant as charged in count I of the information is clear. There was no misconduct by the trial judge or the prosecutor. In fact the judge paid particular attention to the rights and interests of all parties and to the witnesses.