[Crim. No. 13452.   Second Dist., Div. Four.   July 17, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RALPH REYES MADERO, Defendant and Appellant.

·Bruce A. Toor, under appointment by the Court of Appeal, for Defendant and Appellant.

·Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard H. Cooper, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged in count I with a violation of section 664 of the Penal Code (attempted murder) and it was alleged that at the time of the offense. defendant ·was armed with a deadly weapon. Defendant was charged with two prior felony convictions, Penal Code section 459 in 1961, and a conviction of burglary in 1963: In count II

defendant was charged with violating section 12021 of the Penal Code, the dangerous weapons control law.

Defendant was arraigned, he pled not guilty and he admitted the priors. Defendant was tried by a jury and found guilty on both counts and he was found to have been armed at the time of committing the offense in count I.

Manuel Lopez, a high school student, was on the corner of L and Hyatt Streets in Wilmington, with three friends (Joe Huerta, Peter Gutierrez and Roddy Bielma) about 3 o'clock in the morning on January 1, 1966. They had been to a party and were standing and talking to other people. Lopez saw a blue and white 1955 Chevrolet 2-door, with a continental kit on the back of the trunk, pass by. Lopez, who was parked in another '55 Chevrolet, heard words exchanged by people around the car, and then the blue and white Chevrolet turned around and passed Lopez at about 10 miles per hour. There were three people in the Chevrolet. Lopez was shot in the stomach. Gutierrez and Huerta saw defendant fire the shot that hit Lopez, and Gutierrez saw that the weapon was a little gun. Later that same day, about 3 or 4 p.m., Gutierrez and Huerta saw the same car again, and recognized the same three occupants. They took down the license number ISJ 681,[1] and Gutierrez gave the information to Lopez' sister-in-law, Ernestine. Gutierrez and Huerta identified defendant in a lineup.

On January 2, 1966, on I and Avalon Streets at about 10:30 p.m., Officer Fisher and his partner saw, and stopped, a blue and white 1955 2-door Chevrolet with a continental kit on the trunk, license number ISY 681. The officers had received a radio call at about 8 p.m. that day stating that a 1955 Chevrolet white over blue, with a continental kit, license number ISY 681 was wanted in regard to a Penal Code 217 that occurred on L and Hyatt Streets the previous day. The officers ordered the suspects out, the suspects complied, a back up unit arrived, the prisoners were handcuffed and told they were under arrest. Officer Hill, one of the officers in the back up unit, advised the suspects that they had a right to remain silent, that before they made any statement they were entitled to the services of an attorney, and that anything they said could be used against them in any subsequent criminal action. After the occupants were arrested, Officer Fisher requested permission to search the vehicle and the driver said, "Go

---

[1]Witnesses variously described the license number as ISJ 681 or ISY 681.

ahead and search it.'' A gun was found on the floor of the rear seat.

At the police station defendant said it was his gun but that he had no further statement to make until he saw his attorney. On January 3d, Sergeant Marra told defendant that he did not have to answer his questions or make statements, that he had a right to have an attorney present, and that if he made any statements they could be used against him in a criminal proceeding. Defendant said, ''Yes, this is my gun.'' Also, ''I had it in my pocket when the cops were stopping us,'' and ''I slid it under the rear seat.'' Defendant also said he was sitting in the front seat. Officer Marra said, ''You understand what you are admitting? You are an ex-con and it is a felony for you to possess a gun like that.'' Defendant replied, ''Yes, I know what I'm saying.''

Defendant testified that he was in a bar on New Year's Eve from 7 p.m. until 10 or 11 p.m., that he then went to a bowling alley, that he met some friends, went back to the bowling alley, went to his sister's house, and his sister took him home. Defendant said he blacked out some time in the night but was positive he didn't shoot anyone. Defendant said he was given a ride in the car the next day, but the gun wasn't his. Martha Balderama testified that defendant was at her party some time on New Year's Eve. Defendant's stepsister said she saw defendant walk to Martha's apartment at 2:30 a.m., that he was drunk and she took him home at 4 o'clock. Defendant's mother said her son was at her bar at 1:30 and she saw him again at 4:30. John Olloque said he saw defendant from 11:30 to 12:30 and could not remember whether they rode in an automobile.

Defendant contends that he was not effectively informed of his right to counsel or his right to have counsel present during the interrogation, and that the trial court erred in admitting evidence obtained by a search following an unlawful arrest.

I

We need not decide whether or not the information possessed by Officer Fisher and his partner was sufficient to support a valid arrest of defendant and his companions. For reasons set out below, the officers had a right, independent of an arrest, to search the automobile and that right was not lost because of the prior arrest, even if it had been illegal.

The most recent decision of the United States Supreme Court has clarified earlier cases on the right to search auto-

mobiles. ■ As we read that case (*Dyke* v. *Taylor Implement Mfg. Co.* (1968) 391 U.S. 216 [20 L.Ed.2d 538, 88 S.Ct. 1472], and the cases discussed therein, the police may, even without a warrant and though not incident to an arrest or as part of the process of inventory of an impounded car, search an automobile when they have "reasonable and probable cause" to believe that the search will produce either the instrumentality of, or evidence relating to, a specific crime. (*Dyke* v. *Taylor Implement Mfg. Co., supra; Brinegar* v. *United States* (1949) 338 U.S. 160 [93 L.Ed. 1879, 69 S.Ct. 1302]; *Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790].) In the *Dyke* case, the court stated the rule as follows (at 20 L.Ed.2d, p. 543):

"Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office. [Citing *Brinegar* and *Carroll*.] The cases so holding have, however, always insisted that the officers conducting the search have 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search."

■ Judged by this test, we think the search of the car was lawful. The officers were entitled to rely on data given to them through official channels. (*People* v. *Borbon* (1956) 146 Cal.App.2d 315 [303 P.2d 560].) They were so advised that an automobile, of a peculiar color and design, had been involved in a serious offense involving violence. When they saw such a car they had "reasonable and probable cause" to believe that an examination of it might produce evidence relating to the particular crime in which an automobile of that special description had been involved. Since the search was, thus, lawful per se, the fact that it followed a possibly illegal arrest and a possibly invalid "consent" is immaterial. Under *Dyke* and the cases cited therein, neither consent nor arrest were necessary to support the search.

## II

■ Defendant's second point is that his statement was not properly admitted into evidence. Defendant argues that he was not effectively informed of his right to counsel, nor was he informed of his right to counsel during his interrogation. Defendant states that a mere statement that defendant has the right to the "services" of an attorney does not convey the necessary warning. Since the instant trial commenced prior to the decision of *Miranda* v. *Arizona* (1966) 384 U.S.

436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974][2] on June 13, 1966, the instant case is controlled by the principles of *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], in accordance with the rule of *People* v. *Rollins* (1967) 65 Cal.2d 681, 683 [56 Cal.Rptr. 293, 423 P.2d 221].

In the case of *People* v. *Valencia* (1967) 249 Cal.App.2d 370, 375 [57 Cal.Rptr. 567], defendant complained that the warning that ''he could have the services of an attorney'' was deficient in that it implies that he could have an attorney if he could pay for one and it failed to convey the impression that he could have an attorney with him during the interrogation. The appellate court held that this was sufficient to comply with the rule of *Dorado* and *Escobedo,* and that the police had no duty to warn the defendant that he had a right to counsel during the interrogation since *Miranda* was not in effect at the time of trial.[3]

In addition, defendant testified that he knew of his rights to counsel and to remain silent. Under those circumstances, he could not have been confused by the language used, even though it might have been more specific as to his right to free counsel.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied August 5, 1968, and appellant's petition for a hearing by the Supreme Court was denied September 11, 1968.

---

[2]The first day of the courtroom trial (not the preliminary court procedures) was April 19, 1966.

[3]Defendant cites *People* v. *La Vergne* (1966) 64 Cal.2d 265 [49 Cal. Rptr. 557, 411 P.2d 309], *People* v. *Faris* (1965) 63 Cal.2d 541 [47 Cal.Rptr. 370, 407 P.2d 282], and *People* v. *Parriera* (1965) 237 Cal. App.2d 275 [46 Cal.Rptr. 835], to support his argument. However, none of these cases actually hold that defendant must be informed of a right to an attorney during the interrogation.