°Statement of Facts.

[No. 10,104.]

# THE PEOPLE *v.* JOSEPH GETTY.

EVIDENCE SUFFICIENT TO PROVE A BURGLARY.—When a room was entered and money stolen therefrom between six o'clock P. M. of the fifth and one P. M. of the sixth, and the room was occupied from twelve M. of the fifth until one P. M. of the sixth, and the money was found in the possession of the defendant a short time before sunrise on the sixth, and he was in a saloon under the room at eleven P. M. of the fifth, and stated that he remained in the saloon while two persons " went up stairs and done the job:" *Held,* that the evidence was sufficient to warrant the jury in finding that the room was entered and the money taken in the night time.

IDEM.—When the evidence in the same case further showed that one of the persons mentioned by the defendant as having perpretrated the burglary, had recently been in the employ of the person from whom the money was stolen, had been in the room, and was in the saloon with the defendant on the night of the burglary, and that the two were in company on the morning of the sixth, and remained together during a part of the day, and the defendant paid out the kind of money stolen during the day, which consisted of Chilian and Peruvian coin, rarely seen in circulation at the place, and the person mentioned above told the defendant after the arrest that he got and spent all the money: *Held,* further, that the evidence was sufficient to warrant the jury in finding that the defendant was connected with the burglary.

POSSESSION OF MONEY AS EVIDENCE OF LARCENY.—Although the possession of money recently stolen is usually of slight weight as evidence to prove the guilt of the person in whose possession it is found, yet if the money is of a kind rarely seen in circulation at the place, and consists of a combination of pieces, such as Chilian half ounces and a single Peruvian ounce its value as evidence is largely increased.

BILL OF EXCEPTIONS.—A bill of exceptions should state the evidence relating to the point presented in a narrative form, or by a statement of its substance, or what it tended to prove.

SETTLEMENT OF BILL OF EXCEPTIONS.—The Judge is justified in refusing to settle a proposed bill of exceptions which consists of the reporter's notes written out, containing questions and answers, and remarks of counsel, Judge and jurors during the trial.

APPEAL from the Municipal Criminal Court of the City and County of San Francisco.

The defendant and Elodore Saldez were jointly indicted for burglary alleged to have been committed on the 5th day of January, 1874, by entering in the night time the room of Rosa Miranda and Juana Castro, with intent therein to commit larceny. Said Miranda and Castro kept a saloon

on Dupont street, San Francisco, and lived in a room over the saloon. Mrs. Miranda kept in a trunk in the room upstairs a gold watch and chain, a gold locket, a breast-pin, ear-rings, a silver watch, and two hundred dollars in money, consisting of a Peruvian ounce and Chilian half-ounces; and two Chilian gold dollars. The room was entered and the jewelry and money were taken. The defendant had a separate trial, and was convicted, and appealed.

The other facts are stated in the opinion.

*Darwin & Murphy*, for the Appellant.

*Attorney-General Love*, for the Respondent.

By the Court, RHODES, J.:

Two points are presented on this appeal· First, that the evidence is insufficient to show that the room from which the money and jewelry were stolen was entered in the night time; and second, that if a burglary was in fact committed, the evidence is insufficient to prove that the defendant is guilty.

1. That the room in question was entered on the 5th or 6th of January, and money and jewelry were then stolen, is beyond controversy. It became necessary for the jury to determine from the evidence at what time the entry was effected. The money and jewelry were last seen by Rosa Miranda in her trunk in the room at about six o'clock in the evening of the 5th, and the loss was discovered between 12 M. and 1 P. M. of the 6th of January. Rosa Miranda, her sister and a son of the latter, aged about 12 years, retired to their beds in the room at about 12 P. M. of the 5th, where they all remained till the morning of the 6th, and the boy remained in the room until about 12 M. of that day. The defendant had in his possession, on the morning of the 6th and before sunrise, a quantity of Chilian gold coin of the denomination of that which was stolen. He was in a saloon under the room in question at about 11 P. M. of the 5th, and he stated to the police officer who arrested him on the 6th that he (the defendant) remained in

the saloon while two persons named by him "went up stairs and done the job." From this evidence, and other evidence which need not be recapitulated here, it became the duty of the jury to determine whether the room was entered in the night time or the day time; and we cannot say that the evidence was not sufficient to satisfy the jury beyond a reasonable doubt, that the entry was made in the night time.

2. Was the evidence sufficient to warrant the jury in finding the defendant guilty of burglary? He was at the saloon of Rosa Miranda about the time when the burglary was committed, and, although he denied that he committed it, he admitted that he knew when and by whom it was done. Saldez, one of the persons mentioned by the defendant as having perpetrated the burglary, had recently been in the employment of Rosa Miranda and her sister, and had been in the room from which the money and jewelry were stolen, and was at the saloon with the defendant on the night of the burglary. He and the defendant were in company at 7 A. M. of the 6th of January, and remained together during a considerable part of the day. A part of the stolen money consisted of a quantity of Chilian gold coin—half ounces and a Peruvian ounce, all of the value of about two hundred dollars. On the 6th of January, the defendant, in payment for wine, etc., at the cellar where he and Saldez were seen at 7 A. M. of that day, paid Chilian half ounces, and at other places on that day, and soon thereafter he paid or tendered the same kind of money, and at one place he offered a Peruvian ounce, and at another he stated that he had plenty of the Chilian half ounces. The defendant and Saldez, while under arrest for the burglary, and during their return from the Grand Jury room, conversed about the offense with which they were charged, and Saldez said to the defendant that he (the defendant) got and spent all the money. These facts tend to connect the defendant with the commission of the offense. The possession of money of the same kind as that which was recently stolen is usually of slight, if any, weight as evidence to prove the guilt of the person in whose possession it is found, if money of this kind is in general circulation at

that place; but it is of much greater significance when that kind of money is rarely seen in circulation at that place; and its value as evidence is further increased when both the money found in possession of the accused and that which was stolen consists of a combination of pieces of such money, as in this case, of a large number of Chilian half ounces and a single Peruvian ounce. It strongly tends to the identification of the money as the money which was stolen, and thus to connect the defendant with the burglary. (See *People* v. *Melvane*, 39 Cal. 614.)

The bill of exceptions appears to consist of the reporter's notes, written out in long-hand, containing the questions and answers in full, and the side bar conversations and remarks of the judge, counsel, jurors and witnesses. In no conceivable case can it be necessary or proper that a bill of exceptions should be made up in that manner. It was never intended that the reporter's notes should constitute a bill of exceptions. The evidence relating to the points presented should be stated, as far as possible, in narrative form, or by a statement of its substance, or what it tended to prove, and the questions should be stated only when it is necessary to present the point of an objection thereto.

The practice of making up bills of exceptions in the reprehensible form adopted in this case, has become so prevalent that some measures must be taken for its correction. The Judge of the Court below would be justified in refusing to settle a proposed bill of exceptions when it is presented in that form, and we are of the opinion that it is his duty to strike it from the files. The proposed amendments to the bill, if obnoxious to the same objections, should be treated in the same manner.

Judgment and order affirmed.