[Crim. No. 787. Fourth Dist. Sept. 24, 1953.]

THE PEOPLE, Respondent, v. BENJAMIN H. THOMPSON, Appellant.

Howard B. Clayton for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendant was charged with and convicted of the crime of burglary in violation of section 459 of the Penal Code. The jury verdict fixed the degree of the offense as burglary in the first degree. Thereafter a motion for new

trial was made and denied and judgment was entered declaring the defendant to be an habitual criminal and sentencing him to the state prison. He appeals from the judgment and the order denying the motion for a new trial and his sole contention here is that the evidence is insufficient to sustain the verdict of the jury.

## Statement of Facts and Evidence

At about 7:30 p. m. on November 27, 1952, Mrs. Odie Thornton left her apartment at 831 Broadway in San Diego and proceeded to a sandwich shop nearby, where she worked and of which she was a coowner. She returned to her apartment at about 8:30 p. m. to "pick up a check" and after remaining there a few moments, again returned to the sandwich shop where she worked until about 4:30 a. m. of November 28th. It was her nightly custom to check the cash register, remove the money therefrom and take it to her apartment. On the night of November 27th she had left approximately $300 in a metal cabinet in the living room of her apartment and upon her return from work on the following morning, at about 4:30 a. m., she found that the apartment had been entered in her absence; that the locks on the filing cabinet had been pushed in and that all the money therein had been stolen, together with a list of the number of rolls of quarters and dimes which she had fastened to some of the currency with a paper clip. The money stolen consisted of currency, a $10 roll of quarters, four $5.00 rolls of dimes, about 10 silver dollars, and some nickels and pennies. Mrs. Thornton, upon discovering her loss, contacted her brother, who was also part owner of the shop, and he in turn called the police. About an hour later the defendant was arrested in his nearby apartment. He was then fully dressed and on his person and on a table in the apartment the officers found a total of $286.74, consisting of $241 in currency, $8.00 in silver dollars, one half dollar, $10 in quarters, $19.60 in dimes, $4.45 in nickels and $3.19 in pennies. The currency consisted of five $20 bills, 10 $10 bills, six $5.00 bills and 11 $1.00 bills.

When first questioned by the arresting officers, defendant stated that he had been in his room the entire night of November 27th. He later remembered that he had gone out for a few minutes to buy a bottle of vodka, and when shown a partly used bus ticket found in his room, admitted that he had boarded a Greyhound bus at about 8 or 8:30 p. m. on the evening of November 27th and traveled on it as far as

Oceanside, when he remembered that he was not to leave San Diego; that he then got off and boarded another bus for San Diego. When asked where he obtained the money found in his room and on his person, defendant stated that it was "savings and that he had spent a small portion of it for a bottle of vodka and one or two other items. However, two days before the burglary defendant sought employment in a bakery in San Diego and at that time stated that he did not have $100 with which to post the bond required and that he would be back the next day and would try to borrow the money.

Defendant was employed in the sandwich shop as a dishwasher for about six weeks prior to November 19, 1952, and was then discharged. During his employment he worked on the night shift with Mrs. Thornton and was in the shop when she removed the money from the cash register at night. After having been discharged, he twice visited Mrs. Thornton's apartment to ask "for his job back" and according to the testimony of one of the waitresses, he visited the shop between November 19th and 27th and stated to her that "he thought it was a dirty deal that he had gotten and that he was going to get even." This witness also testified that she saw the defendant in front of a clothing store across the street from the sandwich shop between 6 and 6:30 p. m. on November 27th.

We conclude that the evidence set forth in the foregoing statement is sufficient to sustain the verdict of the jury and to support its conclusion that the money recovered from the defendant was part of that stolen from Mrs. Thornton's apartment.

Counsel for appellant (appointed by this court), in his well prepared brief, relies principally upon the following language in *People* v. *Getty,* 49 Cal. 581, 583:

"The possession of money of the same kind as that which was recently stolen is usually of slight, if any, weight as evidence to prove the guilt of the person in whose possession it is found, if money of this kind is in general circulation."

The court was there discussing the weight of the testimony and went on to say:

". . . but it is of much greater significance when that kind of money is rarely seen in circulation at that place; and its value as evidence is further increased when both the money found in possession of the accused and that which was stolen consists of a combination of pieces of such money, as in this case, of a large number of Chilian half ounces and a single Peruvian ounce. It strongly tends to the identification of

the money as the money which was stolen, and thus to connect the defendant with the burglary. (See *People* v. *Melvane*, 39 Cal. 614.)''

▆ Where, as here, the amount of money found in the possession of the defendant and that stolen was approximately the same, as was the number of silver dollars and quarters, and a part of the cash receipts consisted of nickels and pennies, the question of the identity of the property stolen was one of fact for the jury to be considered with all the other evidence.

▆ It was the function of the jury in the first instance and of the trial court after verdict to determine what facts were established by the evidence and the verdict cannot be here set aside on the ground of insufficiency of the evidence where it is not clearly apparent that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. ▆ As was said in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778] :

'' 'We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' ▆ If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.'' (Citing cases.)

▆▆ While the mere possession of stolen property is not alone sufficient to sustain a conviction of theft, such possession plus slight corroborative evidence of other inculpatory circumstances will suffice, and where there is substantial evidence tending to support the verdict of the jury, an appellate court cannot, as a matter of law, substitute its judgment on the facts for that of the jury. (*People* v. *Wissenfeld*, 36 Cal.2d 758, 763-765 [227 P.2d 833].) The record before us contains ample corroborating evidence of defendant's guilt in addition to the evidence of possession of the stolen property.

Judgment and order affirmed.

Griffin, Acting P. J., concurred.