[Crim. No. 8503. Second Dist., Div. One. Mar. 27, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. KENNETH
EDWARD HOPKINS, Defendant and Appellant.

Kenneth Edward Hopkins, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was convicted of unlawfully taking an automobile in violation of section 10851, Vehicle Code. While represented on the lower court level by the public defender, defendant appears before us in propria persona, he at no time having requested of this court appointment of counsel.

The owner testified that around 11:30 p.m. on February 6, she parked her Chevrolet in a parking lot, the next morning it was gone, and she gave no one permission to take the car. Police Officer Ward testified substantially as follows: On Feb-

ruary 7, at Figueroa and 41st Drive, at approximately 4:45 p.m. he and his partner passed the Chevrolet driven by defendant and occupied by Charles McGee (Morgan) and Theodore ("Brother") Bynum. Knowing it to be stolen the officers started to turn around, and, looking back, saw defendant turn right and stop, the right doors "pop open" and defendant and the two boys abandon the car and run west. Defendant and McGee ran between the apartment houses and as the latter slipped and fell, the officer drew his gun and ordered defendant to halt; defendant did so. After his arrest defendant told him that around 2 or 2:30 p.m. on February 7, he was walking in the vicinity of 26th and Hoover and "Brother" (Bynum) and "another kid" (McGee) drove by and picked him up; he asked "Brother" if he could drive and he drove around a while and picked up a hitchhiker, dropping him off at 28th and Hoover; there was then some mention of the car being stolen and "they decided to go home as quickly as possible"; and when they saw the police car someone in the back yelled, "Lets make it," so he pulled over to the curb and they jumped out and ran. In a second conversation with defendant 15 minutes later, in the presence of McGee and a brother officer, defendant changed his story and said that the boys did not pick him up on the afternoon of February 7 (as he had before stated), but on February 6; that they drove around that day and then went to "Brother's" house and slept that night in the car; and that they drove him home and later in the afternoon picked him up. He said the rest of the prior conversation was true.

Theodore "Brother" Bynum was advised that he could refuse to testify, but he testified for the People as follows: On February 6 he was on foot with defendant and McGee; they wanted to see some girls so they took a Ford and went to Hollywood, but the Ford stopped and defendant took a Buick; the Buick made too much noise, they abandoned it and looked for another car; upon seeing the Chevrolet in a parking lot defendant said, "This one," and defendant got in and started it up and drove it to his (Bynum's) home; they stayed the night in the car and took defendant home in the morning; they picked him up at 2 p.m. and defendant drove the car; when they saw police, defendant stopped at the curb and they were "scared," jumped out and started to run; defendant said he was on probation or parole.

Defendant testified that he had seen the Chevrolet the night before at M.C.'s house. He was talking to M.C. when McGee

and Bynum came over and said they would take him home; Bynum drove and they were looking for some girls, drank some beer and stayed in the car all night. They took him home the next morning and picked him up at 2:30 p.m., then he drove the car and when they saw the officers, Bynum said, "Lets make it, the car is gone"; he said, "What's wrong," and Bynum replied, "The car is hot," so he parked it, jumped out and ran. He denied he knew the car was stolen or that he took it from the parking lot.

Defendant's claim of "misrepresentation" by his counsel, based upon his assertion that he failed to subpoena two witnesses for the defense, has no merit. At all times, defendant was represented by the public defender; at no time at the lower court level did defendant complain that he was not, or had not been, adequately represented, or that he wanted two witnesses, who were not called, to testify, or that he requested his counsel to subpoena them. Concerning a defendant's failure to call such matters to the attention of the trial judge, the Supreme Court had this to say: "Moreover, even if there had been any incompetency on the part of defense counsel, it is questionable whether defendant in the instant case could complain on appeal. A defendant may complain at any time during the trial that his counsel is not adequately representing him thereby affording the trial court an opportunity to correct the situation, but if a defendant fails to avail himself of this privilege at the trial level, he cannot ordinarily after an adverse judgment first complain of the matter on appeal. (*People* v. *Prado,* 190 Cal.App.2d 374, 377 [12 Cal.Rptr. 141]; *People* v. *Comstock,* 147 Cal.App.2d 287, 299 [305 P.2d 288]; *People* v. *Hood,* 141 Cal.App.2d 585, 589-590 [297 P.2d 52].)'' (*People* v. *Monk,* 56 Cal.2d 288, 299 [14 Cal.Rptr. 633, 363 P.2d 865].)

The burden of sustaining a charge of inadequate representation rests on appellant. (*People* v. *Robillard,* 55 Cal. 2d 88 [10 Cal.Rptr. 167, 358 P.2d 295]; *People* v. *Crooker,* 47 Cal.2d 348 [303 P.2d 753].) His only complaint against counsel is his bare assertion that he failed to subpoena two witnesses. But he has offered nothing to show the testimony these witnesses would have given had they been called, its materiality to the defense, or how it could have assisted him.

Representation of a defendant by counsel, whether he be of the accused's own choice (*People* v. *Wein,* 50 Cal.2d 383 [326 P.2d 457]; *People* v. *Redden,* 187 Cal.App.2d 275 [9 Cal.Rptr. 368]) or appointed by the court (*People* v. *Ford,*

200 Cal.App.2d 905 [19 Cal.Rptr. 758]), ''will not be declared inadequate except in those rare cases where his counsel displays such a lack of diligence and competence as to reduce the trial to a 'farce or a sham.' [Citations.]'' (*People* v. *Wein*, 50 Cal.2d 383, 410 [326 P.2d 457].) The record in this case does not even remotely approach such a situation; it reveals that the public defender was active in the trial—he cross-examined the People's witnesses, vigorously presented all aspects of the defense, placed defendant on the stand and examined him, and argued the matter to the court—and appeared at the time for the hearing on the application for probation and pronouncement of judgment and sentence. In general he conducted the defense in as effective a manner as could have been done by any average lawyer. ▇▇ But even were we to assume that the public defender was requested to subpoena Mrs. Matthews and her stepson and refused, and that their testimony would have assisted the defense, ''such failure in our opinion represents only a mistake of judgment which did not 'destroy the integrity of the proceedings as a trial' and therefore would not constitute a denial of due process. (*People* v. *Scott,* 186 Cal.App.2d 661, 666 [9 Cal. Rptr. 75].)'' (*People* v. *Ford,* 200 Cal.App.2d 905, 914 [19 Cal.Rptr. 758].)

▇▇ Likewise of no merit is appellant's claim of error that he was convicted on the ''prejudiced testimony'' of Theodore Bynum.

Section 10851, Vehicle Code, provides: ''Any person who drives or takes a vehicle not his own, without the consent of the owner thereof, and with intent either permanently or temporarily to deprive the owner thereof of his title to or possession of the vehicle, whether with or without intent to steal the same, or any person who is a party or accessory to or an accomplice in the driving or unauthorized taking or stealing is guilty of a felony, . . .''

It is apparent from the record that, disregarding the testimony of Bynum, the evidence is sufficient to support the lower court's finding of guilt. Undisputed are the facts that the Chevrolet had been stolen and that shortly thereafter defendant was found driving it without the owner's consent. ▇▇ Mere possession of a stolen car under suspicious circumstances is sufficient to sustain a conviction of unlawful taking. (*People* v. *Parmenter,* 186 Cal.App.2d 509 [9 Cal.Rptr. 135]; *People* v. *Warren,* 175 Cal.App.2d 233 [346 P.2d 64];

*People* v. *Rhinehart,* 137 Cal.App.2d 497 [290 P.2d 600]; *People* v. *Holland,* 82 Cal.App.2d 310 [186 P.2d 58].)

 "Possession of recently stolen property is so incriminating that to warrant a conviction [of unlawful taking an automobile, burglary or grand theft] there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt. (E.g., *People* v. *Citrino,* 46 Cal.2d 284, 288-289 [294 P.2d 32]; *People* v. *Thompson,* 120 Cal.App.2d 359 [260 P.2d 1019]; *People* v. *Morris,* 124 Cal.App. 402, 404 [12 P.2d 679].)" (*People* v. *McFarland,* 58 Cal.2d 748, 754 [26 Cal. Rptr. 473, 376 P.2d 449]. See also *People* v. *Thompson,* 120 Cal.App.2d 359 [260 P.2d 1019].) The suspicious circumstances in the instant case consist of defendant's conduct upon seeing the police car—immediately turning right, stopping and abandoning the car; and his flight from the officers.

 "Flight is a factor tending to connect the accused with the commission of an offense and may be indicative of guilt. (*People* v. *Hoyt,* 20 Cal.2d 306, 313 [4] [125 P.2d 29]; *People* v. *Davis, supra,* 251 [14] [48 Cal.2d 241 (309 P.2d 1)].)" (*People* v. *Parmenter,* 186 Cal.App.2d 509, 511 [9 Cal.Rptr. 135].) In addition are the inconsistent statements made by defendant to the police immediately after his arrest. In his first statement he told the officer he was in the car for the first time on the afternoon of February 7; in his second, he placed himself in the vehicle on the afternoon of February 6, some hours before the car was actually taken from the parking lot—it was not stolen until after 11:30 p.m. on February 6. The conduct and flight of defendant, together with his conflicting and obviously false statements, constitute the corroboration necessary under the rule of *People* v. *McFarland,* 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449].

Defendant's conviction reflects the lower court's acceptance of the testimony of the People's witnesses and the rejection of defendant's version of what occurred. It is also clear that the trial judge concluded, and properly so, that without regard for Bynum's testimony, there was sufficient evidence to support a finding of guilt, for he stated that the officer's testimony "combined with the flight when they saw the police officers together with the conflicting statements given at the time he was picked up, all indicate that there is no doubt the defendant is guilty." However, this statement *does not preclude any assumption* that the trial judge may also have

accepted as true the testimony of Bynum in corroboration of the other evidence.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.