[Crim. No. 4179. First Dist., Div. Two. Nov. 18, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. MANLEY FUQUA, Defendant and Appellant.

Richard E. Herndon, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Eric Collins, Deputy Attorney General, for Plaintiff and Respondent.

SHOEMAKER, P. J.—Defendants Manley Fuqua, Kenneth Hendricks, Clement Anderson and Joseph Wilmoth were jointly charged with illegal possession of heroin in violation of Health and Safety Code, section 11500. Defendant Fuqua was also charged with six prior convictions of felony, defendant Hendricks with one, and defendant Anderson with one. Following a trial by jury, defendants Fuqua and Hendricks were convicted of the offense charged. The jury was unable to agree upon a verdict as to defendants Anderson and Wilmoth. Defendant Fuqua alone appeals from the judgment of conviction.

The evidence may be summarized as follows: About 8 p.m. on February 8, 1962, Officer Taylor told Officers Larkin and Nilan that he had learned from an informant that one Manley "Fuquet" or "Fuquette" was operating a "shooting gallery" in room 14 of the Fenton Hotel. Fuquet was known to the police as a narcotics user. Around 9:30 p.m. on the same evening, Officers Larkin and Nilan went to the Fenton Hotel, knocked upon the door of room 14, and asked if Manley Fuquet was there. When a voice responded "Who's there?" Larkin replied "Al Larkin." The voice then said, ";He is not here; he's in ... room 15." The officers then heard another voice say "Al who?" followed by a murmur of voices. Officer Larkin then said, "Open the door, it's the police." There was then the sound of rapid walking and scuffling, of a window being opened, of water being turned on, and of a heavy object being moved in front of the door.

After approximately two or three minutes, the officers heard the sound of a heavy object being moved away from the door. Defendant Fuqua then opened the door, and he and defendant Hendricks, who were closest to the door, stood back and allowed the officers to enter the room. Defendants Anderson and Wilmoth remained standing further back toward the rear of the room. Upon taking one step into the room, Officer Larkin looked to his left toward the kitchen area of the room, and observed on a table a white towel, a woman's silk stocking, an eyedropper, and a blackened silver spoon. There were also several drops of a red liquid which appeared to be blood on the towel and on the table. Officer Larkin then asked who was Manley Fuquette, and the defendant Fuqua replied, "I am. ... I am Manley Fuqua." When Officer Larkin showed defendant Fuqua the articles on the table, he denied all knowledge of them. The other three defendants similarly indicated their lack of knowledge. Officer Larkin then examined defendant Fuqua's arms and noted several needle marks. One of the marks appeared to be fresh, being a small red area, fairly moist with what appeared to be blood. Upon examining defendant Anderson's arms, Officer Larkin found them to be "clean." He was unable to find any fresh needle marks on the arms of defendants Wilmoth or Hendricks.

Officer Nilan had meanwhile entered the kitchen area of the room and had found a pillbox containing white tablets in the pocket of a shirt thrown over a chair. The tablets were subsequently found to contain dilaudid. Officer Nilan also found a needle and a white paper bindle on the floor near the table. The paper contained a white substance which was subsequently found to be heroin. All four defendants denied ownership of these articles.

Officer Larkin then inquired as to the ownership of certain articles found in a closet. Defendant Fuqua acknowledged ownership of some keys, a crescent wrench, and certain other objects. Officer Nilan then brought the landlady to the room and asked her to whom she had rented it. She pointed her finger at defendant Fuqua and said that she had rented the room to him a week ago. Defendant Fuqua said nothing.

On February 10, 1962, two days after the four defendants were arrested, defendants Hendricks, Anderson and Wilmoth voluntarily submitted to Nalline tests and were found to have been free of narcotics for 72 hours.

Each defendant testified on his own behalf. Generally, they denied ownership or possession of the narcotics or parapher-

nalia, or any knowledge thereof, or that they had ever seen or noticed them, although Hendricks and Fuqua admitted being in room 14 to clean it up and although Fuqua had gone to the kitchen to get cups for all to drink the wine he had purchased. Fuqua also denied the landlady's statement that he was the tenant of room 14.

Appellant's first contention is that the evidence was insufficient as a matter of law to support his conviction. He argues that the three essential elements of the crime of unlawful possession of narcotics are: (1) the forbidden substance was under the dominion and control of the accused; (2) the accused was aware of its presence; and (3) the accused know the substance was a narcotic (*People* v. *Tabizon* (1958) 166 Cal.App.2d 271, 273 [332 P.2d 697]) and that element (2) was not established as to him. Appellant concedes that there was sufficient evidence that he had at least constructive possession of the narcotic and that if he had been aware of its presence, he would have known the nature of the substance. Appellant asserts, however, that the record is devoid of any evidence that he knew of the presence of the narcotic within the room. This contention is untenable.

It is settled that the fact of knowledge may be shown by circumstantial evidence. (*People* v. *Brajevich* (1959) 174 Cal.App.2d 438, 445 [344 P.2d 815]; *People* v. *Flores* (1958) 162 Cal.App.2d 222, 224 [327 P.2d 932].) In the instant case, there was ample evidence that appellant had occupied room 14 for a week prior to his arrest and that he alone had been in the kitchen area where the narcotics were found immediately prior to the arrival of the police officers. There was evidence that the paraphernalia for administering the narcotics were in plain view on the kitchen table. In addition, there was evidence that appellant alone had fresh needle marks on his arm and that the other three defendants had all passed Nalline tests within two days of their arrest. This evidence was sufficient to support a finding that appellant was well aware of the presence of the heroin within the room.

Appellant next contends that the narcotics and paraphernalia were seized pursuant to an illegal entry and search and that the trial court therefore erred in allowing them to be introduced into evidence. This contention is similarly without merit.

Although it is true that the prosecution declined to reveal the identity of the informant who originally caused the police to suspect appellant, it is settled that such a refu-

sal is justified under circumstances such as those presented here. Disclosure is required only where the informant participated in the crime charged, where he was an eyewitness to the crime, where his communication constituted the sole justification for the actions of the police, or where the informant would be a material witness on the issue of the defendant's guilt. (*People* v. *McMurray* (1959) 171 Cal.App.2d 178, 183 [340 P.2d 335].) In the instant case, the informant did not participate in or witness the crime with which appellant was charged, and it is therefore apparent that his testimony would not have been material on the issue of appellant's guilt. ▉ There is similarly no merit to the contention that the informant's communication constituted the sole justification for the entry and search by the police.

Here, the police had knowledge, independent of the informant's communication, that appellant was a known user of narcotics. Upon proceeding to appellant's room, knocking on the door, and identifying themselves as police, Officers Larkin and Nilan heard the sounds of rapid walking and scuffling, of a window being opened, of water being turned on, and of a heavy object being moved in front of the door. In view of appellant's prior use of narcotics, these sounds were clearly sufficient to justify the inference that a felony had been committed and that an attempt to dispose of the evidence was being made. Under such circumstances, there was reasonable cause for the subsequent entry and search. (See *People* v. *Hollins* (1959) 173 Cal.App.2d 88 [343 P.2d 174]; *People* v. *Williams* (1959) 175 Cal.App.2d 774 [1 Cal.Rptr. 44]; and *People* v. *White* (1959) 167 Cal.App.2d 794 [334 P.2d 963].)

▉ Appellant next assigns as error the failure of the trial court to give on its own motion CALJIC No. 27, to the effect that when the People rely on circumstantial evidence, it must be inconsistent with any rational theory of the defendant's innocence. This instruction ought to have been given. However, as pointed out in *People* v. *Barkoff* (1958) 163 Cal.App.2d 639 [329 P.2d 1005], such error need not invariably necessitate a reversal of the judgment. In the *Barkoff* case, the trial court had failed to give CALJIC No. 27, but had given CALJIC No. 26, to the effect that the defendant was entitled to the benefit of any reasonable interpretation of the evidence favorable to his innocence. Since the jury was not totally uninstructed as to the law necessary to a proper consideration of circumstantial evidence and since the evidence of the defendant's guilt, although circumstantial, was

overwhelming, the court held that the failure to give
CALJIC No. 27 was not prejudicial. The court, in so holding,
reviewed the cases in which CALJIC No. 26 had been given,
but the failure to give CALJIC No. 27 had nevertheless been
held prejudicial and concluded that in each instance the
guilt of the defendant was a close question. (Pp. 645-646.)

In our opinion, the appellant's guilt was not a close ques-
tion. Moreover, the trial court not only gave an instruction
based upon CALJIC No. 26, but also gave an instruction
based upon CALJIC No. 28, to the effect that when a case
rests chiefly upon circumstantial evidence or when the jury
may find a defendant guilty solely upon such evidence, each
fact which is essential to complete a chain of circumstances
establishing his guilt must be proved beyond a reasonable
doubt. In view of these instructions and the strength of the
evidence against appellant, the failure to give CALJIC No.
27 was not prejudicial.

■   Appellant's next contention is that the trial court
erred in failing to instruct the jury on its own motion that
the testimony of an accomplice ought to be viewed with dis-
trust. This contention cannot be sustained. Appellant's three
codefendants were not witnesses for the prosecution but testi-
fied solely on their own behalf, and their testimony tended to
corroborate appellant's version. Under such circumstances, it
would have been highly improper and prejudicial to them
had the court indicated that they were accomplices and that
their testimony should be viewed with caution. (*People* v.
*Arends* (1957) 155 Cal.App.2d 496, 512-513 [318 P.2d 532].)

■   It is settled that a court may properly refuse accom-
plice instructions where a codefendant denies participating
in the crime and does not incriminate the other defendant, or
where the codefendant denies participating in the crime and
the effect of such denial is to incriminate the other defend-
ant. (*People* v. *Catlin* (1959) 169 Cal.App.2d 247, 254-255
[337 P.2d 113].)   ■   It is only where the codefendant has
so testified as in practical effect to plead guilty as well as to
incriminate the other defendant that accomplice instructions
should be given. (*People* v. *Catlin, supra,* at p. 255.)

■   Appellant's final contention is that the trial court
erred in failing to instruct the jury that evidence of appel-
lant's other crimes could be considered solely on the issue of
appellant's knowledge of the nature of the substance found
in room 14. Appellant concedes that no such instruction was
requested and that, in the absence of a request, the trial
court is not required to give such an instruction. He asserts,

however, that the public defender who represented him at the trial was so derelict in duty in failing to request such an instruction that his errors and omissions deprived him of his right to due process and a fair trial. Appellant relies upon *People* v. *Simmons* (1946) 28 Cal.2d 699 [172 P.2d 18], where the defendant similarly contended that the grossly inadequate representation of the public defender had deprived him of due process in the trial court and that he was therefore entitled to raise certain errors on appeal despite the absence of proper objections in the trial court. The appellate court declined to pass upon this contention and stated, "Assuming this to be so, none of the matters urged by present counsel appear to have prejudiced defendant" (p. 710), which statement applies in full to the present case.

In *People* v. *Wein* (1958) 50 Cal.2d 383, 410 [326 P.2d 457], the court held that the handling of the defense by counsel of the accused's own choice would be declared inadequate only "in those rare cases where his counsel displays such a lack of diligence and competence as to reduce the trial to a 'farce or a sham.'" In the subsequent case of *People* v. *Ford* (1962) 200 Cal.App.2d 905, 914 [19 Cal.Rptr. 758], the rule of the *Wein* case was held to apply also to counsel appointed for the accused. (To the same effect, see *People* v. *Hopkins* (1963) 214 Cal.App.2d 487, 490-491 [29 Cal.Rptr. 636].)

In the present case, an examination of the record reveals that appellant received competent representation from thoroughly qualified and capable counsel throughout the entire trial, and that on no occasion did he complain of any inadequacy. Such being the case, he cannot complain for the first time on appeal of the trial court's failure to give an instruction which appellant's counsel failed to request.

Moreover, an instruction to the effect that appellant's prior convictions could be considered solely for the purpose of showing his familiarity with narcotics would have been an incorrect statement of the law. Since appellant chose to testify on his own behalf, the jury was entitled to consider his prior felony convictions as bearing on his credibility (*People* v. *Theodore* (1953) 121 Cal.App.2d 17, 27 [262 P.2d 630]), and was properly so instructed. An additional instruction to the effect that appellant's prior narcotics convictions also tended to demonstrate his familiarity with the substance found in room 14 might well have been to appellant's

disadvantage.

Judgment affirmed.

Agee, J., and Taylor, J., concurred.

A petition for a rehearing was denied December 5, 1963, and appellant's petition for a hearing by the Supreme Court was denied January 29, 1964.