[Crim. No. 9528. Second Dist., Div. Four. June 9, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. BENNIE JACK WEIZER, Defendant and Appellant.

---

Bernard & Jaffe, Jaffe, Osterman & Soll, F. Filmore Jaffe and Alan M. Genelin for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Paul N. Wenger, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Defendant Weizer and codefendant Horton were convicted by a jury of four counts of grand theft. The court suspended proceedings as to Weizer (hereinafter referred to as defendant) and granted 10 years' probation on condition he spend the first six months in county jail. Defendant appeals from the "judgment."[1]

---

[1] The order granting probation is deemed a final judgment for the purpose of appeal. (Pen. Code, § 1237, subd. 1.)

Defendant and codefendant Horton were charged with the theft, on four different occasions, of pipe from the Haldeman Pipe and Supply Company. On these occasions Horton, who was in charge of shipping and receiving for the Haldeman company, would arrange to have a load of pipe shipped to a plumbing surplus company owned by defendant. Defendant would then sell the pipe and divide the receipts with Horton.

Jack Manildi, proprietor of Haldeman Pipe and Supply Company, testified that he had never authorized these deliveries to defendant. The comptroller of the company found no record of these transactions. Donald Henry, manager of Haldeman, testified that he began an investigation when, in November of 1962, the company received through the mail a copy of a trucking invoice for pipe delivered to defendant. When no record of such a sale was found, inquiry was made of the trucking company, and, as a result, three other shipments of pipe to defendant were discovered.

On December 7, 1962, in Manildi's office, Horton made a full confession in the presence of Manildi and Thomas J. Menalo who was the representative of a bonding company. This confession was reduced to writing by Menalo and Horton signed it. Horton was then taken to a police station, where he was arrested.

The following morning two police officers accompanied Horton to defendant's place of business, where Horton repeated his confession in defendant's presence. One of the officers testified that he then asked defendant what he had to say and defendant responded: " 'I guess it was Horton's and my idea together. I am wrong, I admit it.' " He also said: " 'I knew I'd get caught, but then I have had other chances to buy stuff and these were the only four times I ever did.' " Defendant then went with the officers to the police station, where, later in the day, he was booked.

At the trial defendant testified that he received the pipe, but said that he had purchased it under an oral agreement with Manildi. Defendant testified further that it had been their practice not to issue invoices or receipts, that payment had always been in cash because Manildi would not accept his check, and that he had been allowed to pay whenever he was able.

Defendant's first contention on appeal is that the trial court erred in sustaining objections to questions which were

directed at establishing a course of dealing in cash, without the preparation of conventional business records. In the cross-examination of Mr. Henry, defendant's counsel attempted to elicit the fact that when the witness was employed in Santa Monica by another concern owned by Manildi he sold the defendant plumbing supplies for cash, rather than by check. Defendant also attempted to elicit the fact that it was a custom of the industry to sell to dealers for cash. Objections to questions on both these subjects were sustained as immaterial.

Assuming that the objections should not have been sustained, the rulings of the court could not have been prejudicial. Subsequently, when Manildi was called on surrebuttal, he testified that it had been his practice from time to time to sell surplus, obsolete and junk material to the defendant for cash and that no invoices were given and no receipts were given. This was direct evidence of the fact which defendant was trying to establish in his cross-examination of Mr. Henry. Defendant therefore had the benefit of the testimony of the victim of the theft that on some occasions actual sales had been made for cash and without the preparation of the usual invoices and receipts. The jury had this information and was able to weigh it in determining whether or not the oral unrecorded transactions which are the subject of this prosecution had been agreed to by Manildi, as the defense maintained.

Defendant's second point is that the court erred in refusing to give his requested jury instructions that the testimony of an accomplice should be viewed with distrust and that the testimony of an accomplice cannot support a conviction, unless corroborated by other evidence.[2]

This calls for an examination of Horton's position in the case. Horton was charged and tried jointly with defendant Weizer. It was the prosecution's theory that Horton and defendant had worked together to steal pipe belonging to Manildi. Horton, being a codefendant, was not called as a witness by the prosecution, but he took the stand on his own behalf. He testified that each time he had shipped pipe to defendant he had done so on Manildi's express instructions. He said it was customary not to prepare sales slips for such transactions. He said that when he had collected cash from defendant he had turned it over to Manildi.

---

[2] The instructions which were requested and refused are CALJIC numbers 821, 821-A, 822 (revised), 823, 826 (revised), 826 (new) (alternate), 829 and 830.

Horton further testified that on December 7, 1962, Manildi asked him, as a favor, to say that he had made unauthorized deliveries to defendant so that Haldeman Pipe and Supply Company could make a recovery on Horton's fidelity bond. This was Horton's explanation of the written confession which he signed for the representative of the bonding company. Horton testified that he had actually made the statements which were recorded in that document, but that the statements were untrue in several respects. He denied that on the morning of December 8 he had made the incriminatory statements in defendant's office as related by the police officer. On cross-examination he was pressed for admissions as to just which parts of his written confession and which parts of the officer's testimony were true, but he never departed from his story that the pipe had been delivered on Manildi's orders and that his written confession was merely an attempt to deceive the bonding company.

The written confession, signed by Horton, was received in evidence against Horton only, and when the jury was instructed it was told that a statement of one defendant in the absence of his codefendant could not be considered for any purpose as evidence against the codefendant.

From the whole record it appears that the conviction of defendant Weizer was based entirely upon proof other than the testimony of his accomplice. The testimony of Horton was for the most part consistent with that of defendant Weizer. If the jury had believed Horton both defendants would have been acquitted. There was no occasion for an instruction that a conviction could not be had upon the uncorroborated testimony of an accomplice.

The argument in defendant's closing brief appears to assume that Horton's signed confession was a part of the evidence which was considered against defendant and which made the accomplice instruction necessary. But no accomplice instruction could have been applicable to that evidence because the court told the jury it could not consider Horton's confession against defendant Weizer at all.

■ There was a further ground for refusing defendant's request to instruct the jury that the testimony of Horton ought to be viewed with distrust. Horton was testifying not as a prosecution witness, but for the purpose of defending himself. Under these circumstances the requested instructions would have been prejudicial to Horton, and for that

additional reason the request was properly refused. (*People* v. *Fuqua,* 222 Cal.App.2d 306, 312 [35 Cal.Rptr. 163] ; *People* v. *Green,* 181 Cal.App.2d 747 [5 Cal.Rptr. 525].)

■ This case was tried in 1963, before the decision in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. It is therefore necessary to examine the record to determine whether the rules set forth in that opinion require a reversal here.

The first interview of defendant by the police clearly is not within the *Dorado* rule. The police came to defendant's office to investigate the truth of what Horton had told the bonding company. Defendant was not then under arrest.

The point at which defendant was arrested later that day is not shown in the record. There is no evidence that he was arrested before he went to the police station. Defendant testified that while he was in his office he asked the officers "if I was arrested or not" and one of them replied, " 'No, I want you to come down to Hollenbeck Police Station and speak to Mr. Manildi.' " Defendant told the officers he wanted to talk to Manildi, and that "he can straighten this thing out." Defendant also testified as follows :

"Q. When the police officers were talking to you both at your place and at the Police Station, and you were talking with them, did they tell you at any time that you were under arrest ? A. No, sir.

"Q. Did you feel at that time that you were under arrest ? A. No."

At the police station on December 8 a tape recording was made of a conversation between defendant, a police officer, Horton and Manildi. Portions of that recorded conversation were received in evidence as a part of the People's rebuttal. In that conversation Manildi asked defendant what he had done and why. Defendant and Horton then talked at some length about the transactions, how defendant had been buying from Horton at about 65 per cent off, and then reselling the pipe in Mexico. Defendant said to Manildi: " 'I don't even want to look you in the face. I am a heel, let's put it this way. I mean—I don't want to say it that way, but I don't know what in the hell to say, Jack, I'm wrong, and that's it. That's all I can say. Is there some way I can make it up, or do something ? I will do whatever you want, but I mean, I just needed it frankly to pay—you know, I had a lot of liens and this and this and that, and I figured—like you

know, in business you use one guy to somebody and pay off another one, and that's just what I did.' "

Here we have incriminatory statements made at a meeting which the defendant himself had sought in order to "straighten this thing out," where the accusers were Manildi and Horton, not the police, where defendant did not consider himself under arrest, and where the conversation was largely between defendant and Manildi. Such a conference is not "a process of interrogations that lent itself to eliciting incriminating statements" within the meaning of *People* v. *Dorado*. The inquiry in the police station was, in form, investigatory rather than accusatory. Manildi's questions reflected his amazement that a man with whom he was on friendly terms and with whom he had conducted a long and satisfactory business relationship would have stolen from him. The form and manner of the questioning, in its context, was designed to give the defendant an opportunity to explain his position, if he cared to do so. Nothing in the whole episode remotely suggests any coercion, beyond the inherent moral force of the situation where a man who has just committed a theft from a friend is confronted by the victim and asked what he has to say. Defendant's responses were not induced by any form of trickery or deception. Under these circumstances, the statements made by defendant are not rendered inadmissible under the *Dorado* rule. (See *People* v. *Stewart,* 62 Cal.2d 571, 578-579 [43 Cal.Rptr. 201, 400 P.2d 97].)

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied June 22, 1965, and appellant's petition for a hearing by the Supreme Court was denied August 25, 1965.